Donald C. NELSON, Respondent,

v.

Deborah K. NELSON, Appellant.

No. 20974.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 16, 1997.

the Division of Health. *Tidwell,* 931 S.W.2d at 490.

Warren S. Stafford, Taylor, Stafford, Woody, Clithero & Fitzgerald, Springfield, for appellant.

Nancy Steffen Rahmeyer, Springfield, for respondent.

PER CURIAM.

This is an appeal from a judgment dissolving the marriage of Deborah K. Nelson (wife) and Donald C. Nelson (husband). Wife appeals the trial court's denial of her request for maintenance and attorney fees and the distribution of marital property. This court affirms.

The parties were married August 24, 1974. They have two children, Christopher D. Nelson and Ashley A. Nelson. The children were 16 years old and 13 years old, respectively, at the time of trial.

Husband is a physician. He practices medicine in Springfield, Missouri. Wife was not employed when this action was commenced or at the time of trial. She worked only briefly during the marriage. She worked during the first year of marriage while husband was in his second year of medical school. She quit work after she was injured in an automobile accident. She explained, "I tried returning to work right—not too long before [husband] finished in '77 to see if I could possibly return to work. And it was determined that I could not." Wife described her work as "accounts receivable." In doing her job she was "looking down the entire time." She testified she was unable to continue because of a neck injury.

After husband completed medical school and a residency and began practicing medicine, wife worked for a short time in his medical office. He testified, "She—She functioned well. She was a help and—But then just quit and—and—because she didn't like it and she didn't want to continue."

The trial court dissolved the marriage, granted the parties joint legal custody and joint physical custody of the children (husband has primary physical custody but wife has the children under her care and supervision for significant periods of time), divided marital property, and ordered husband and wife to each pay and hold the other harmless from specific debts. Wife was ordered to pay child support to husband in the amount of $194 per month.

This case is reviewed in accordance with Rule 73.01(c). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it or it is against the weight of the evidence or unless it erroneously declares or applies the law. *In re Marriage of Lawry*, 883 S.W.2d 84, 86 (Mo.App.1994). The evidence is viewed in the light most favorable to the judgment. *Id.* at 86–87.

The first allegation of trial court error is directed to the denial of wife's request for maintenance. Wife contends the trial court abused its discretion in failing to award maintenance. She contends the decision not to award maintenance was contrary to the evidence regarding her financial needs and the relative income producing abilities of the parties.

Section 452.335.1, RSMo 1994, permits a trial court to award maintenance to a spouse if it finds (1) the spouse lacks sufficient property, including marital property apportioned as part of the dissolution judg-

ment, to provide for the spouse's reasonable needs, and (2) the spouse is unable to support himself or herself through appropriate employment. The trial court included written findings in the document that includes its judgment. The findings include:

[T]he Court has considered [wife's] reasonable needs, her health and the amount of money she can earn by investing the marital portion of the property awarded to her without [wife] having to invade the principal to meet her reasonable needs.

Wife erroneously premises her argument that she should have been awarded maintenance on the existence of factors enumerated in § 452.335.2. A trial court considers these factors after it determines, under § 452.335.1, that maintenance should be awarded. *In re Marriage of Johnson*, 856 S.W.2d 921, 927 (Mo.App.1993). The factors are considered in ascertaining what amount of maintenance to award.

What is considered in determining if a spouse should receive maintenance is whether the party requesting maintenance can meet his or her reasonable needs through property or employment. *Wallace v. Wallace*, 839 S.W.2d 354, 357 (Mo.App. 1992). If a divorcing spouse is not employed, he or she has an affirmative duty to seek full-time employment for purposes of support. *In re Marriage of Torix*, 863 S.W.2d 935, 940 (Mo.App.1993); *In re Marriage of Lewis*, 808 S.W.2d 919, 924 (Mo.App.1991). The reasonable expectation of investment income is also considered. *Johnson*, 856 S.W.2d at 927.

The trial court valued the marital property it awarded wife at $790,495.77. The trial court also directed husband to make cash payments of $139,713.87 to wife. Although the trial court's findings did not specifically evaluate wife's earning capacity, the Form 14 utilized in calculating the amount of presumed child support included a sum attributable to earnings she could expect from employment. The Form 14 the trial court adopted was prepared by husband. He testified that the income attributed to wife included employment "at a job that paid $1,000 a month."

Wife's brief asserts that she received income-producing assets valued at $502,593. However, that amount does not include retirement plans distributed to her. Wife was awarded a one-half interest in a pension trust, a one-half interest in a profit sharing plan, and a one-half interest in a 401K plan. The trial court valued the interests in the retirement plans awarded wife at $127,668, $77,124 and $130,252, respectively.

Wife was also awarded an asset the trial court listed as "Fidelity Asset Manager" and valued at $10,122. Wife did not include that asset in her itemization of income-producing assets.

The share of husband's retirement plans that wife received is income-producing property. The total value the trial court placed on her share of those plans amounts to $335,044. The value of assets wife acknowledges to be income producing ($502,593), added to the value of interests in retirement plans she received ($335,044), totals $837,637. If the "Fidelity Asset Manager" is income producing, that total would be increased by another $10,122.

The only evidence of wife's income-earning capabilities was husband's testimony that the Form 14 calculation of child support attributed $1,000 per month to wife as income she was capable of earning from employment. The trial court accepted that amount in determining the child support wife would be ordered to pay. It is inferable that the trial court found husband's assessment of wife's earning capabilities to be reasonable.

Wife provided the trial court with a schedule of anticipated monthly expenses she expected to incur in the event the dissolution of marriage was granted. It totaled $6,913.80. The itemization of anticipated fixed expenses included a monthly house payment or monthly rental payment of $1,300, real estate taxes of $125, security system charges of $29.50 and home insurance of $15. Other anticipated monthly expenses included children's clothing of $400, miscellaneous spending money for the parties' son of $100, tuition for their son to attend a military academy of $1,113, piano lessons for their daughter of $40, school expenses for their daughter of $40, yard work at a cost of $85, housekeeper

at a cost of $40, medical expenses for children (not including insurance) of $50, prescriptions and medication for children of $50 and miscellaneous items of $100.

The trial court did not designate wife as primary physical custodian of the children nor was she awarded the marital home. Expenses attributable to the children or to the maintenance of the family home are not factors in determining wife's needs. The total of those items, and the unexplained "miscellaneous" expense item, is $3,487.50. If this amount is deducted from the $6,913.80 wife identified, the remaining monthly expenses total $3,426.30. Wife has the additional child support obligation of $194 per month for total monthly expenses of $3,620.30. In addition, her needs include sufficient funds to maintain a suitable residence.

A modest return of 5% on the more than $800,000 of income-producing property wife received would yield in excess of $40,000 per year or an average of more than $3,300 per month. The earning capacity of $1,000 per month the trial court attributed to wife increases the amount of funds available to more than $4,300 per month. Based on the evidence wife produced concerning her needs, the trial court could have concluded that this amount was sufficient to meet the needs she identified and to maintain a residence.

Wife asserts the trial court considered her unemployable because it did not specifically find she was employable. This court does not agree. Where a trial court fails to make a finding of fact on an issue, all facts are deemed found in accordance with the result reached. Rule 73.01(a)(3). *See Green Acres Enterprises, Inc. v. Freeman*, 876 S.W.2d 636, 638 (Mo.App.1994); *Zolman v. SEMO Produce, Inc.*, 875 S.W.2d 605, 606 (Mo.App. 1994).

The trial court attributed $1,000 per month income from employment to wife in ascertaining her child support obligation. Additionally, husband testified that wife satisfactorily performed her duties during the time she worked in his medical office.

Wife was asked specific questions concerning physical ailments, as well as depression,

she had experienced in the past. She was asked if she claimed she was not able to work due to physical disability. She answered, "I'm saying at this time I don't know what type of work I could do." She was asked if she claimed her depression prevented her from holding meaningful employment. She told the trial court she was not depressed at that time. She answered the question concerning whether depression prevented her from holding a job, "I have not claimed that. I've said it may affect it if it ever reoccurs."

The evidence supports a finding that wife was capable of maintaining full-time employment. That finding would be consistent with the result the trial court reached in ordering wife to pay child support and denying her request for maintenance.

■ Wife also contends the interests she was awarded in the retirement plans should not be considered in determining if the trial court erred in denying her request for maintenance. She argues that she cannot use the funds in the retirement plans until she reaches age 59½ without paying a penalty. That argument is not persuasive. "Creating a future estate or preserving marital property intact under the guise of 'maintenance' is contrary to the meaning or purpose of that term." *Torix*, 863 S.W.2d at 940.

There was evidence that the assets in the retirement plans produced double-digit rates of return in 1994. Whether wife wishes to leave these funds untouched for future use and growth or encroach on them now is a business decision available to her. It does not disqualify those assets from consideration with respect to the trial court's decision not to award maintenance.

■ A trial court's determination of whether to award maintenance is discretionary. *Lewis*, 808 S.W.2d at 924. "[A]ppellate review is only to determine if that discretion was abused." *Id.* The trial court did not abuse its discretion in denying maintenance to wife. Point I is denied.

■ Point II contends the trial court erred in refusing to award wife attorney fees because her sole income is investment income from marital assets awarded her. She argues the trial court's failure to award at-

torney fees "was clearly against reason and the evidence."

As a general rule, parties to an action for dissolution of marriage must bear the expense of their own attorney fees. *Harrison v. Harrison*, 871 S.W.2d 644, 647 (Mo.App. 1994). However, § 452.355.1 permits a trial court to award attorney fees to a party.

Wife has sufficient funds with which to pay attorney fees without undue hardship. This court cannot say that the trial court's refusal to award attorney fees is against the logic of the circumstances or is arbitrary and unreasonable. *See Hubbs v. Hubbs,* 870 S.W.2d 901, 909 (Mo.App.1994). The trial court did not abuse its discretion in denying wife an award for attorney fees. Point II is denied.

 Point III asserts the trial court erred in valuing a policy of life insurance awarded to wife as marital property at $30,000. Wife contends its value was zero; that she is entitled to have the money judgment she received increased by $15,000.

Wife states that the life insurance policy was listed on the parties' list of assets without an assigned value. She contends husband testified he had no idea as to its cash value; that there was no evidence that supports the value the trial court assigned. She suggests the assigned value of $30,000 was a calculated amount used to show that marital property of equal value was awarded each party.

This court finds that if there was error in the trial court's valuation of the life insurance policy at $30,000, the error was not prejudicial with respect to the overall distribution of marital property. It would not preclude the division of marital property from being a just division of property. *See* § 452.330. "The trial court must divide marital property as it deems just after considering all relevant factors. The division does not have to be equal." *Rombach v. Rombach,* 867 S.W.2d 500, 505 (Mo. banc 1993) (citations omitted); *See also Degerinis v. Degerinis,* 724 S.W.2d 717, 721 (Mo.App.1987).

Disregarding the claimed error in valuing the insurance policy, if the $139,713.87 husband was ordered to pay wife and the $143,848 indebtedness on the marital home award-

ed to husband are deducted from the value of marital property he received, husband was awarded marital property valued at $930,209.65. If the $139,713.87 husband was ordered to pay wife is added to the value of the marital property wife received and the $30,000 value the trial court placed on the insurance policy is deducted from wife's share of marital property, the value of her marital property is $900,209.64.

Appellate review is directed to the dispositive portions of the judgment. *Degerinis, supra.* It does not focus on the trial court's prefatory statement of reason or other recital. *Id.* The judgment is to be affirmed if it could have been reached on any reasonable theory. *Id.* This court concludes that the distribution of property, considered as a whole, was just. Point III is denied. The judgment is affirmed.